1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WILLIAMS, KASTNER & GIBBS PLLC
Theresa H. Rava, SBN 272343
trava@williamskastner.com
601 Union Street, Suite 4100
Seattle, WA   98101
Telephone:  (206) 628-6600
Fax:  (206) 628-6611

*Attorneys for Plaintiffs F-19 Holdings, LLC and F19 Franchising, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| F19 FRANCHISING, LLC, a California limited liability company; F-19 HOLDINGS, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> ENDO FITNESS LL, LLC, a California limited liability company, ENDO FITNESS 3, LLC, a California limited liability company, ENDO FITNESS, LLC, a California limited liability company, ROBERT RODGER, individually, PAUL RICE, individually, PAUL INFALD, individually, and ADAM OSBORN, individually, <br><br> Defendants. | NO.  2:23-CV-00185-MEMF-JC <br><br> Judge: Hon. Maame Ewusi-Mensah Frimpong <br> Dept.: Courtroom 8B <br><br> **DECLARATION OF THERESA H. RAVA IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Hearing Date: June 22, 2023 <br> Time:            10:00 AM <br><br> Complaint Filed: January 11, 2023 <br><br> [*Filed concurrently with Declarations of T. Rava, C. Pirog, R. Lineberger, E. Wilson, D. Milat, T. Graves, M. Vanderyacht, E. Frith, A. Jalil, A. Russell, and D. Russell, [Proposed] TRO, and [Proposed] Order to Show Cause*] |

---

7741686.1

## DECLARATION OF THERESA H. RAVA

I Theresa Rava declare:

1.  I am an attorney duly licensed to practice before all courts of this State and am an attorney with Williams Kastner & Gibbs, PLLC, counsel for F-19 Holdings, LLC and F19 Franchising, LLC. The matters stated herein are true of my own knowledge, and if called upon to testify, I would and could competently testify thereto.

2.  The "FITNESS 19" word mark was registered with the United States Patent and Trademark Office on July 13, 2004, Registration No. 2,863,684. A true and correct copy of a printout from the United States Patent and Trademark Office's Trademark Electronic Search System ("TESS") showing registration of the FITNESS 19 Mark is attached to this Declaration as **Exhibit B**.

3.  A true and correct copy of the July 31, 2009 Notice of Acceptance and Acknowledgment of §§ 8 & 15 Declaration acknowledging incontestability is attached to this Declaration as **Exhibit C**.

4.  True and correct copies of printouts from the United States Patent and Trademark Office's Trademark Electronic Search System ("TESS") showing federal applications pending for U.S. Serial No. 97/241,815 for the design and name "FITNESS 19" and U.S. Serial No. 97/241,804 for "19" are attached to this Declaration as **Exhibit D**.

5.  A true and correct copy of the initial filing of ENDO Fitness, LLC's Articles of Incorporation is attached to this Declaration as **Exhibit E**.

6.  The Fit19.com website identifies 38 clubs on its website as Fitness 19 clubs, including the unauthorized Fitness 19 club in Loma Linda. Below is a true and correct screenshot from the Fit19.com website stating it has 38 locations in California.

7741686.1

1
2
3
4
5
6
7
8
9
10
11
12



13    7.    Below is a true and correct screenshot taken from the Fit19.com
14  website of one of many times the Fit19.com website displays the FITNESS 19
15  mark.
16
17

18
19
20    8.    A true and correct copy of a July 27, 2022 email from Adam Osborn
21  to Thomas Ouren moving equipment from the ENDO Partners' authorized
22  Fitness 19 club in Newark, California to the unauthorized Fitness 19 club in
23  Loma Linda is under seal by this Court at Docket 23-1, attached to the
24  Declaration of Theresa H. Rava as **Exhibit F**.
25    9.    A true and correct copy of the April 11, 2022 lease agreement for the
26  Loma Linda Fitness 19 club in Lima Linda, California, received via subpoena in
27  the related case, *Endo Fitness LL, LLC v. F-19 Holdings, LLC and F19*
28

DECLARATION OF THERESA H. RAVA

7741686.1

*Franchising, LLC*, Case No. 2:22-cv-03124-MEMF ("Related Complaint"), is attached to this declaration as **Exhibit G**.

10.    A true and correct copy of a September 26, 2022 email from Robert Rodger regarding the start of construction for the Loma Linda club is under seal by this Court at Docket 23-1, attached to the Declaration of Theresa H. Rava as **Exhibit H**. This document was produced by Defendants on March 28, 2023.

11.    A true and correct copy of the relevant pages from the ENDO Fitness LL, LLC operating agreement is under seal by this Court at Docket 23-1, attached to the Declaration of Theresa H. Rava as **Exhibit I**.

12.    A true and correct copy of the Guaranty of Lease for the Loma Linda property lease is under seal by this Court at Docket 23-1, attached to the Declaration of Theresa H. Rava as **Exhibit J**.

13.    A true and correct copy of a January 21, 2022 email from Robert Rodger to Casey Pirog is under seal by this Court at Docket 23-1, attached to the Declaration of Theresa H. Rava as **Exhibit K**.

14.    On April 3, 2023, the Fit19.com website stated that the Loma Linda Fitness 19 club would be opening on April 15, 2023. I took a screenshot of the webpage. This is the date F-19 Holdings, LLC and F19 Licensing, LLC discovered the Loma Linda Fitness 19 club would be opening on April 15, 2023. A true and correct copy of the screenshot of the Fit19.com website announcing the grand opening of a Fitness 19 club in Loma Linda taken on April 3, 2023 is below:



**FITNESS 19 *LOMA LINDA***

A new, state-of-the-art Fitness 19 gym is coming soon to the community of Loma Linda.

Fitness 19 Loma Linda is a gym built for YOU! Conveniently located at 25586 Barton Road, next to the Stater Bros. Market, in the Loma Linda Shopping Center, Fitness 19 is a state-of-the-art gym for the community of Loma Linda!

 CryoLounge+

 Relax Space

 Cardio Equipment

15.    A true and correct copy of a March 28, 2021 email from ENDO Partner Robert Rodger to Casey Pirog stating the ENDO Partners started their own brand of fitness clubs and would open clubs under their brand name is attached to this declaration as **Exhibit P**.

16.    A true and correct copy of an October 6, 2021 email from ENDO Partner Robert Rodger to the other ENDO Partners re the $1.9 million construction budget is attached to this declaration as **Exhibit Q**.

/ / /

/ / /

4

7741686.1

17.     On April 17, 2023, Jeff Kobulnick and Heidy Nurinda of the Lewitt Hackman firm met and conferred with me and Dean von Kallenbach for 1.5 hours. We discussed various potential motions including a TRO. We met and conferred a second time on April 25, 2023 despite that there is no meet and confer requirement prior to filing a motion for temporary restraining order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that I signed this Declaration on April 25, 2023 in the state of Washington.

                 */s/Theresa H. Rava*

                 THERESA H. RAVA

DECLARATION OF THERESA H. RAVA

7741686.1

**PROOF OF SERVICE**

(1)    I, the undersigned, declare as follows: I am over the age of eighteen years and not party to the within entitled action; my business address is 601 Union St., Suite 4100, Seattle, WA 98101.

(2)    On April 25, 2023, I electronically served a true and correct copy of Declaration of Theresa H. Rava.

(3)    I electronically served a true and correct of the document listed in (2) as follows:

Name of Persons Served:

Name of Persons Served: Steve Feldman, Jessica Rosen, Jeffrey Kobulnick, and Heidy Nurinda of Lewitt, Hackman, Shapiro, Marshall & Harlan On behalf of Plaintiffs.

Electronic Service Address: SFeldman@lewitthackman.com, JRosen@lewitthackman.com, jkobulnick@lewitthackman.com, and hnurinda@lewitthackman.com.

Date of Service:  April 25, 2023

I declare under penalty of perjury under the laws of the States of Washington and California that the foregoing is true and correct.

Signed on April 25, 2023, at Seattle, Washington.

 /s/Azra Hadzic
AZRA HADZIC
Paralegal, Williams Kastner & Gibbs, PLLC

1

7741686.1

# EXHIBIT B



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Fri Jan 13 03:32:21 EST 2023*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:     OR   Jump   to record:     **Record 2 out of 3**

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# Typed Drawing

| | |
|---|---|
| **Word Mark** | **FITNESS 19** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: health and fitness centers, namely providing fitness and exercise facilities. FIRST USE: 20021008. FIRST USE IN COMMERCE: 20021008 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 78183633 |
| **Filing Date** | November 11, 2002 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | November 4, 2003 |
| **Registration Number** | 2863684 |
| **Registration Date** | July 13, 2004 |
| **Owner** | (REGISTRANT) F-19 Holdings, L.L.C. CORPORATION DELAWARE Suite 205 4670 NE 8th Street Bellevue WASHINGTON 98007 |
| **Attorney of Record** | Vincent Frantz |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "FITNESS" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20140419. |
| **Renewal** | 1ST RENEWAL 20140419 |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT C

Side - 1



**NOTICE OF ACCEPTANCE AND
ACKNOWLEDGEMENT OF §§8 & 15
DECLARATION
MAILING DATE: Jul 31, 2009**

The combined declaration of use and incontestability filed in connection with the registration identified below meets the requirements of Sections 8 and 15 of the Trademark Act, 15 U.S.C. §1058 and 1065.  The combined declaration is accepted and acknowledged.  The registration remains in force.

For further information about this notice, visit our website at: http://www.uspto.gov.  To review information regarding the referenced registration, go to http://tarr.uspto.gov.

**REG NUMBER:**        **2863684**
**MARK:**            **FITNESS 19**
**OWNER:**           **F-19 Holdings, L.L.C.**

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

F-19 HOLDINGS LLC
COMMERCIAL SERVICES NORTHWEST
950 PACIFIC AVE STE 1250
TACOMA, WA  98402

# EXHIBIT D

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

TESS was last updated on Fri Jan 13 03:32:21 EST 2023

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:        OR  Jump  to record:        **Record 1 out of 3**

| TSDR | ASSIGN Status | TTAB Status |  ( Use the "Back" button of the Internet Browser to return to TESS)



| | |
|---|---|
| **Word Mark** | **FITNESS 19** |
| Goods and Services | IC 041. US 100 101 107. G & S: Health clubs for physical exercise; Providing facilities for health and fitness training. FIRST USE: 20021008. FIRST USE IN COMMERCE: 20021008 |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 26.01.21 - Circles that are totally or partially shaded. |
| | 26.17.01 - Bands, straight ; Bars, straight ; Lines, straight ; Straight line(s), band(s) or bar(s) |
| | 26.17.05 - Bands, horizontal ; Bars, horizontal ; Horizontal line(s), band(s) or bar(s) ; Lines, horizontal |
| | 26.17.13 - Letters or words underlined and/or overlined by one or more strokes or lines ; Overlined words or letters ; Underlined words or letters |
| Serial Number | 97241815 |
| **Filing Date** | **January 27, 2022** |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | January 10, 2023 |
| Owner | (APPLICANT) F-19 Holdings, LLC LIMITED LIABILITY COMPANY DELAWARE Suite 205 4670 NE 8th Street Bellevue WASHINGTON 98007 |
| Attorney of Record | Vincent Frantz |
| Prior Registrations | 2863684 |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "FITNESS" APART FROM THE MARK AS SHOWN |
| Description of Mark | The mark consists of the wording "FITNESS 19", with "FITNESS" underlined and a circle around "19". |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| **Live/Dead Indicator** | **LIVE** |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

TESS was last updated on Fri Jan 13 03:32:21 EST 2023

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout    Please logout when you are done to release system resources allocated for you.

Start    List At:            OR    Jump    to record:        **Record 39 out of 1122**

| TSDR | ASSIGN Status | TTAB Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*

# 19

| | |
|---|---|
| **Word Mark** | 19 |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Health clubs for physical exercise; Providing facilities for health and fitness training. FIRST USE: 20050630. FIRST USE IN COMMERCE: 20050630 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 97241804 |
| **Filing Date** | January 27, 2022 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) F-19 Holdings, LLC LIMITED LIABILITY COMPANY DELAWARE Suite 205 4670 NE 8th Street Bellevue WASHINGTON 98007 |
| **Attorney of Record** | Vincent Frantz |
| **Prior Registrations** | 2863684 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT E

**2 0 1 6 3 6 2 1 0 2 1 2**

| | | |
|---|---|---|
| Secretary of State<br>**Articles of Organization**<br>Limited Liability Company (LLC) | **LLC-1** | |

**FILED**
Secretary of State
State of California

**DEC 27 2016**

**IMPORTANT — Read Instructions before completing this form.**

**Filing Fee - $70.00**

**Copy Fees** - First plain copy free; Additional copies: First page $1.00 & .50 for each attachment page; Certification Fee - $5.00

*Important!* LLCs may have to pay an annual minimum $800 tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

*cc*

This Space For Office Use Only

**1. Limited Liability Company Name** (See Instructions – Must contain an LLC ending such as LLC or L.L.C. "LLC" will be added, if not included.)

Endo Fitness LLC

**2. Business Addresses**

| a. Initial Street Address of Designated Office in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 960 Ellington Lane | Pasadena | **CA** | 91105 |
| b. Initial Mailing Address of LLC, if different than item 2a | City (no abbreviations) | State | Zip Code |
| | | | |

**3. Agent for Service of Process**

Item 3a and 3b: If naming an individual, the agent must reside in California and Item 3a and 3b must be completed with the agent's name and complete California street address.

Item 3c: If naming a California Registered Corporate Agent, a current agent registration certificate must be on file with the California Secretary of State and Item 3c must be completed (leave Item 3a-3b blank).

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| Robert | Theo | Rodger | | |
| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code | |
| 960 Ellington Lane | Pasadena | **CA** | 91105 | |
| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b | | | | |

**4. Management** (Select only one box)

The LLC will be managed by:

☐ One Manager     ☐ More than One Manager     ☑ All LLC Member(s)

**5. Purpose Statement** (Do not alter Purpose Statement)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

**6. The Information contained herein, including in any attachments, is true and correct.**

Organizer sign here

Robert T. Rodger
Print your name here

LLC-1 (REV 06/2016)

2016 California Secretary of State
www.sos.ca.gov/business/be

Under Seal by this
Court at DKT. #23-1
as
# EXHIBIT F

# EXHIBIT G

# LEASE

**THIS LEASE,** made and entered into this -----11th day of ------------------------------------------April, 2022 by and between Matthew Franklin; Nicholas Franklin; Amylynn Franklin Dimaano, F. and F. Investment Company, a California general partnership, Alana Megdal as Trustee of the Alana Megdal 2012 Irrevocable Trust, Blake Megdal; Taylor Megdal; Brooke Megdal, Elliot Megdal as Trustee of the Megdal Family Trust dated 07/02/96, Frenda J. Franklin as Trustee of the Franklin Exemption Trust FBO Frenda J. Franklin u/d/t Dated November 13, 2000; Frenda J. Franklin as Trustee of the Frenda J. Franklin 2012 Irrevocable Trust; all as tenants-in-common (hereinafter collectively called **"LESSOR"**), and ENDO FITNESS LL, LLC, a California limited liability company (hereinafter called **"LESSEE"**).

For and in consideration of the covenants and agreements hereinafter set forth to be kept and performed by Lessee, Lessor hereby demises and leases to Lessee and Lessee does hereby take, accept and hire from Lessor the demised premises hereinafter described for the period, at the rental, and subject to and upon the terms and conditions set forth below.

1. **DEMISED PREMISES.** The demised premises are located in the city or unincorporated area of Loma Linda, County of San Bernardino, State of California. The street address is: 25586 Barton Road, Loma Linda, Ca. The demised premises shall have a frontage of approximately 134 feet (said measurement being from the center partition or from the exterior of the store unit wall if on an end of a building) and a depth of approximately 150 feet (outside dimensions) and shall be deemed to contain 20,100 square feet. The demised premises comprise a portion of a shopping center development, which such shopping center development known as Loma Linda Plaza, is referred to hereinafter and throughout this Lease as the "Shopping Center" and which is now devoted to or is being developed for the purpose of a shopping center. The Shopping Center is described in Exhibit B attached hereto and made a part hereof. Lessee agrees that Lessor may, at any time and from time to time, add additional property and improvements to the Shopping Center and that, subject to Article 22 below, the tenants and uses for the building areas shown on Exhibit A attached hereto and made a part hereof (except for the area leased to Lessee) are subject to change at any time at Lessor's sole discretion. The square footage of the demised premises stated in this Article 1 shall be deemed to be the square footage of the demised premises for all purposes of this Lease.

2. **TERM.** The term of this Lease shall commence on the date hereof and shall end at the expiration of the One Hundred Forty-Fourth (144th) full calendar month following the "Rent Commencement Date" defined below.

3. **PAYMENT OF RENTS.** Lessee hereby covenants and agrees to pay rent to Lessor, which said rent shall be in the form of "fixed minimum rent", "tax on rents", and all other amounts Lessee is obligated to pay or reimburse Lessor pursuant to this Lease. The payment of said fixed minimum rent shall begin on the earlier to occur of (a) the date Lessee opens for business in the demised premises or (b) Eight (8) months following the date Lessor obtains the "SBM Use Waiver" as defined in Article 20 below (such earlier date shall constitute the "Rent Commencement Date"). Said rent shall be paid at the office of Lessor, at the location indicated in Article 12 herein, or at such other place as may be designated in writing from time to time by Lessor.

4. **FIXED MINIMUM RENT.** No fixed minimum rent shall be due or payable for the first twenty-eight (28) full calendar months following the Rent Commencement Date. Commencing on the first day of the twenty-ninth (29th) full calendar month following the Rent Commencement Date, Lessee shall commence paying, a fixed minimum annual rent of Two Hundred Five Thousand Twenty and no/100 Dollars ($205,020.00) payable in twelve (12) equal installments; one such installment in advance on the first day of each and every month continuing through the eighty-fourth (84th) full calendar month following the Rent Commencement Date; provided, however, Lessee shall be entitled to a one-time credit in the amount of Ten Thousand and no/100 Dollars ($10,000.00) against the fixed minimum monthly rent due for the twenty-ninth (29th) full calendar month following the Rent Commencement Date. Should the Rent Commencement Date commence on a day other than the first day of a month, the first monthly installment of fixed minimum rent shall be prorated on a thirty (30) day basis and shall be paid on the first day of the twenty-ninth (29th) full calendar month following the Rent Commencement Date. Commencing on the first day of the eighty-fifth (85th) full calendar month following the Rent Commencement Date the fixed minimum monthly rent shall be increased to Eighteen Thousand Seven Hundred Ninety-Three and 50/100 Dollars ($18,793.50). Any partial month at the end of the term of this Lease will be prorated on a thirty (30) day basis.

**INITIAL(S)**

CONFIDENTIAL                                                                                                      AWIC005099

5. **PAYMENT OF CERTAIN COSTS, FEES AND EXPENSES**. Commencing on the first day of the Fifteenth (15) full calendar month following the Rent Commencement Date, Lessee agrees to pay to Lessor monthly in advance the sum of Thirty-Four (34) cents per square foot of building area in the demised premises as Lessor's reasonable estimate of Lessee's share of the amounts payable by Lessee to Lessor pursuant to Paragraphs Nine, Eleven, Nineteen and Twenty of the General Provisions attached to this Lease. In the avoidance of doubt, it is intended that the payments required to be made by Lessee under this Article 5 are comprised of a "pass-through" of Lessee's pro rata share of operating expenses payable to Stater Bros. under the Declaration (as defined in Article 10 below), reimbursement for Lessor's costs and expenses associated with Lessor's repair and maintenance of the stand-alone building that contains the demised premises, Lessee's pro rata share of insurance expenses for the building(s) insured by Lessor of which the demised premises is a part, Lessee's prorata share of amounts referenced in Paragraph Thirteen of the attached General Provisions, Lessee's prorata share of the insurance referenced in General Provisions Paragraph Nineteen (b), and Lessee's pro rata share of real estate taxes and assessments for the portion of the assessed parcel on which the Shopping Center is located.  If the total of Lessee's monthly payments exceeds Lessee's share of the amounts Lessee is obligated to pay, as the same is ultimately calculated after the end of each calendar year, the excess shall be credited against the next maturing installment(s) owed by Lessee. If the total of Lessee's payments for the calendar year is less than Lessee's share for the calendar year, Lessee shall promptly pay Lessor the difference.  Lessor may increase the advance figure for any calendar year to one hundred five percent (105%) of the advance amount or actual amount of the immediately previous year or, if greater, to an amount reasonably estimated to cover said costs for the upcoming calendar year. At any time, and from time to time, Lessor may elect to make the adjustments provided for above on a fiscal year basis (which fiscal year may be designated by Lessor) rather than a calendar year basis.

6. **TAX ON RENTS**. Lessee shall further pay to Lessor any and all excise, privilege, rental and other taxes, levied or assessed by any governmental authority upon, or measured by, the rent under this Lease. Such tax shall be paid by Lessee whether or not it comprises a portion of any real property tax or taxes or real property tax bills. Nothing contained herein shall be construed to require Lessee to pay any estate, gift, inheritance or net income tax of Lessor.

7. **NOT USED**.

8. **NOT USED**

9. **USE OF PREMISES**. Lessee shall occupy and use the demised premises only for a membership-based fitness facility providing exercise and aerobics classes of the type typically provided by gyms, exercise equipment, and other related health and fitness products and services; provided, however, in no event shall the "other related health and fitness products and services" comprise more than fifteen percent (15%) of Lessee gross receipts in any calendar month. The demised premises shall be occupied and used under the following trade name only: Fitness 19 or such other trade name selected by Lessee. Lessee shall have the right to discontinue the operation of its business and to vacate the demised premises in its sole discretion; provided, however, notwithstanding such business closure, Lessee shall continue to pay all rent and other lease charges and shall continue to abide by all of the other covenants contained in this Lease. Lessor may elect to terminate this Lease by giving Lessee not less than twenty (20) days prior written notice if Lessee discontinues the operation of its business in the demised premises for more than thirty (30) days for any reason other than (a) to remodel the improvements in the demised premises, (b) to repair damages to the improvements in the demised premises, or (c) as a result of a law, rule, or ordinance that prohibits the operation of Lessee's business as a result of public health emergency.

10. **RESTRICTIONS ON USE**. Lessee shall not use or permit the demised premises to be used for any purpose other than as that set forth in Article 9 above, and further covenants and agrees to execute and comply promptly with all statutes, ordinances, rules, orders and regulations of federal, state, county and city governments regulating the use by Lessee of the demised premises. Lessee will not use, or permit the use of the demised premises, in any such manner that will tend to create a nuisance or tend to unnecessarily disturb other tenants or occupants of the Shopping Center or tend to injure the reputation of the Shopping Center. The restrictions set forth in this paragraph shall extend to all agents and employees of the Lessee. The demised premises shall not be used for the conduct or advertising of an auction sale, a bankruptcy sale, a "fire" sale, a "going out of business sale", a "continuous" sale, or any sale similar to the foregoing. Lessee shall not place, display or sell merchandise or other things outside the building on the demised premises or on the sidewalks or on the other common areas. Lessee shall not install, use or authorize any amplifiers or similar devices, or install, use or authorize in, on or about the demised premises any advertising medium that may be heard or seen outside the demised premises, such as flashing lights, search lights, handbills, loudspeakers, phonograph or broadcasts, balloons, banners, nor shall Lessee make any penetration of the roof. Notwithstanding anything to the contrary set forth in this Lease, and in accordance with Paragraph Ten of the General Provisions, Lessee hereby consents to any and all penetrations and other modifications to the roof of the demised premises in connection with the construction contemplated by Article 21 below if, and to the extent, Lessor approves the plans and specifications for such construction. Notwithstanding the foregoing, from and after the execution of this Lease, Lessor shall allow Lessee to place outdoor marketing signs on the exterior of the demised premises provided such signs comply with applicable law and the provisions of the "Declaration" (defined below).

INITIAL(S)

CONFIDENTIAL                                                                                      AWIC005100

No portion of the demised premises shall be used for (a) the handling or sale of groceries, meats, meat products, poultry, fish, fruits, vegetables, delicatessen products, bakery products, dairy products, food items (whether prepared, unprepared or otherwise) or as a food market or food supermarket, (b) the purpose of conducting the business of a bank, trust company, escrow company, finance company, savings and loan association, thrift and loan association or other financial institution, (c) the sale or handling of beer, wine or alcoholic beverages, (d) a drive-in, drive-through, take-out or sit-down restaurant, beer bar, billiard parlor, discotheque, take-out hamburger stand, coffee shop or place of amusement, recreation or entertainment, (e) variety store, (f) a department store, junior department store or discount store, (g) a theatre, (h) a laundromat, (i) handling or sale of clothing, (j) the handling or sale of footwear, (k) the handling or sale of gasoline, petroleum products, tires or automobiles accessories (l) a beauty shop, beauty college, barber shop or barber college, (m) handling or sale of wigs or hair pieces, (n) a massage parlor or adult book store, (o) a dry cleaning establishment, (p) a drug store and/or prescription pharmacy, and/or the sale or handling of any items of merchandise which under law, rule, regulation or order promulgated by a competent governmental authority must be sold by, or in the presence of a registered pharmacist, (q) reading room, (r) delicatessen, (s) any place of instruction or training (except to the extent expressly permitted in Article 9 above), (t) a travel agency , (u) an optical center and/or establishment selling prescription glasses and/or contact lenses, (v) on or off site photo processing whether conventional or digital and as such technologies may evolve, (w) the sale of health and beauty aids and beauty supplies, except that Lessee may sell the items provided for in this subparagraph (w) provided Lessee's gross receipts from the sale of such items does not exceed fifteen percent (15%) of Lessee's gross receipts in any calendar month, (x) [intentionally omitted], (y) any use restricted or prohibited by that certain Declaration of Covenants, Conditions and Restrictions and Grant of Easements dated January 19, 1999 and recorded February 5, 1999 in the Official Records of San Bernardino County, California as Instrument No. 19990048139 (as amended, called the "Declaration"), except to the extent the Declaration may be amended to permit Lessee's proposed use pursuant to the provisions of Article 20 below or (z) mail box rentals, postal packing/shipping services, [intentionally omitted], income tax preparation, dentistry of any kind.

If Lessee violates any of the provisions of this Article, Lessor may (a) give thirty (30) days' written notice to Lessee to cease the violation and, if Lessee shall fail to cure the violation, elect to cancel this Lease, and/or (b) may pursue any other remedy available at law or equity. The enumeration in this paragraph does not directly or by implication permit use or occupancy of the demised premises for any purpose other than as specifically provided in Article 9 of this Lease.

11. **RIGHTS OF LENDERS.** Notwithstanding anything to the contrary in this Lease, Lessor shall not be in default under any provision of this Lease unless written notice specifying such default is mailed to Lessor and to all mortgagees and/or trust deed holders of which Lessee has, prior to such notice, been notified in writing. Lessee agrees that any such mortgagee or trust deed holder shall have the right to cure such default on behalf of Lessor within thirty calendar days after receipt of such notice unless such default is not curable within thirty (30) days, in which event such mortgagee or trust deed holder shall have such additional time as may be necessary to cure such default. Lessee further agrees not to invoke any of its remedies under this Lease until said thirty days have elapsed, or during any period that such mortgagee or trust deed holder is proceeding to cure such default with due diligence, or is taking steps with due diligence to obtain the legal right to enter the Shopping Center or the demised premises to cure the default. Notwithstanding the foregoing, in the event Lessor's default prevents or substantially restricts Lessee's access to and full use and enjoyment of the demised premises, there shall be no restriction on Lessee's right to invoke and pursue any and all remedies available to Lessee at law or in equity.

12. **NOTICE.** Whenever under this Lease a provision is made for any demand, notice or declaration of any kind or where it is deemed desirable or necessary by either party to give or serve any such notice, demand or declaration to the other, it shall be in writing and either sent by a nationally or regionally recognized courier service that provides receipt for delivery or attempted delivery (such as federal Express) or sent by United States registered or certified mail, return receipt requested, with postage prepaid, addressed to Lessee and Lessor as follows:

TO LESSOR: PO Box 400937
            Las Vegas, NV 89147

TO LESSEE: 45 Arroyo Parkway
            Pasadena, CA 91105
            and to the demised premises.

INITIAL(S)

CONFIDENTIAL

AWIC005101

and either party may, by like notice at any time and from time to time, designate a different address to which notice shall be sent. Such notices, demands or declarations shall be deemed sufficiently served or given for all purposes hereunder one business day after being sent by such overnight courier service or two business days after deposit in the United States Mail as registered or certified mail, addressed as aforesaid. If either party changes its address without notifying the other as provided above, then notices sent by such overnight courier service or through the United States Mail as provided above or in a subsequent notice provided under this Article 12, if applicable, shall conclusively be deemed received within the time periods provided for above regardless of the fact the party giving such notice, demand, or declaration knows or has reason to believe that the party to whom notice is being sent is no longer at such address.

13. **AGREEMENTS IN WRITING.** IT IS UNDERSTOOD THAT THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES HERETO AFFECTING THIS LEASE AND THIS LEASE SUPERSEDES AND CANCELS ANY AND ALL PREVIOUS NEGOTIATIONS, ARRANGEMENTS, BROCHURES, AGREEMENTS AND UNDERSTANDINGS, IF ANY, BETWEEN THE PARTIES HERETO AND THEIR AGENTS AND REPRESENTATIVES, OR DISPLAYED BY LESSOR WITH RESPECT TO THE SUBJECT MATTER THEREOF, AND NONE SHALL BE USED TO INTERPRET OR CONSTRUE THIS LEASE. IT IS FURTHER AGREED BY AND BETWEEN THE PARTIES HERETO THAT THERE SHALL BE NO MODIFICATION OR AMENDMENT OF THIS LEASE, EXCEPT AS MAY BE EXECUTED IN WRITING BETWEEN THE PARTIES HERETO.

14. **PREPAID LEASE CHARGES.** Concurrently herewith, Lessee shall pay to Lessor Twenty Three Thousand Nine Hundred Nineteen and no/100 Dollars ($23,919.00) which shall be applied to the first amounts payable by Lessee to Lessor pursuant to Articles 4 and 5 above.

15. **NOT USED.**

16. **EXHIBIT D.** On or before the date Lessee takes possession of the demised premises in accordance with the terms of this Lease, Lessee shall execute and deliver to Lessor a statement substantially in the form attached hereto as Exhibit D incorporated herein by this reference, indicating thereon any exceptions thereto as may exist at that time. Failure of Lessee to execute and deliver such statement shall constitute an acceptance of the demised premises and an acknowledgment by Lessee that the statements included in Exhibit D hereto attached are true and correct without exceptions; provided, however, the foregoing shall not be deemed to relieve Lessee of the obligation to provide such statement.

17. **GENERAL PROVISIONS.** That certain document entitled "General Provisions" attached hereto is hereby incorporated herein and made a part hereof with the same force and effect as though set out in full in this Lease. In the event of any inconsistence between the General Provisions and this Lease and/or the Option Addendum, this Lease and the Option Addendum shall prevail.

18. **SIGN CRITERIA.** Lessor's sign criteria are attached hereto and made a part hereof.

19. **OPTION ADDENDUM.** An Option Addendum is attached hereto and incorporated herein by this reference.

20. **SB USE WAIVER.** The Declaration currently prohibits Lessee's proposed use. Not later than the date of this Lease, Lessor shall request the approval of Stater Bros (a current occupant of the shopping center) to amend the Declaration to allow Lessee's proposed use. It is anticipated that Stater Bros will require the restriping of the shopping center parking lot to add additional parking substantially as shown on Exhibit A hereto. The Stater Bros approval referenced in this Article 20 shall be called the "SB Use Waiver". Provided Lessor obtains the SB Use Waiver and approval from the City of Loma Linda of the proposed parking lot restriping plan depicted on the attached site plan on terms and conditions acceptable to Lessor in its sole and absolute discretion, Lessor shall notify Lessee and shall concurrently provide Lessee with a copy of the SB Use Waiver and City approval ("SB Use Waiver Notice"). On or before the date of this Lease, Lessor shall submit an application to the City of Loma Linda for the restriping of the parking lot. Lessor shall promptly complete the parking lot restriping after Lessor obtains (a) the SB Use Waiver, (b) written notice from Lessee acknowledging the satisfaction or waiver of the Conditional Use Permit contingency provided for in Article 21 below, and (c) City approval of the parking lot restriping. If Lessor is unable to obtain the SB Use Waiver and City approval of the proposed parking lot restriping plan on terms and conditions acceptable to Lessor in its sole and absolute discretion within One Hundred twenty (120) days following the date of this Lease, Lessor or Lessee may terminate this Lease by giving the other written notice of termination. It is anticipated that Stater Bros will require the relocation of the front entrance doors to the demised premises as shown on Exhibit X attached hereto and incorporated herein by this reference, in which event Lessee shall be responsible to relocate the front entrance doors as shown on Exhibit X at Lessee's sole cost and expense prior to the time Lessee opens for business in the demised premises.

R-TR

INITIAL(S)

CONFIDENTIAL

AWIC005102

21. **LESSEE'S CONDITIONAL USE PERMIT AND CONSTRUCTION**. Within ten (10) days after the date Lessor notifies Lessee in writing that Lessor has obtained the SB Use Waiver and approval of the proposed parking lot restriping referenced in Article 20 above on terms and conditions acceptable to Lessor, Lessee shall submit its applications for the Conditional Use Permit required by the City in connection with Lessee's proposed use and Lessee shall commence the preparation of its plans and specifications for Lessee's proposed tenant improvements for the demised premises. Lessee shall diligently pursue the issuance of the Conditional Use Permit and the completion of its construction drawings. Upon City approval of lessee's construction drawings and issuance of the Lessee's Conditional Use Permit, Lessee shall promptly commence, and thereafter diligently pursue, the completion of Lessee's improvements required in order to allow Lessee to open for business. If Lessee is unable to obtain its Conditional Use permit within One Hundred Twenty (120) days following receipt of Lessor's SB Use Waiver Notice, Lessee may terminate this Lease by providing Lessor with written notice of such termination within said One Hundred Twenty (120) day period.

22. **COMPETITION RESTRICTION**. Provided Lessee is not in default of its obligations in this Lease beyond any applicable cure period, following the date hereof: (a) Lessee shall have the exclusive right to operate a business in the Shopping Center for a "Restricted Use,"; (b) the Lessor shall not enter into any new lease with any person to operate a business in any portion of the Shopping Center for a "Restricted Use"; and (c) Lessor shall prohibit other tenants in the Shopping Center from operating a business for a "Restricted Use" if, and to the extent, Lessor has the right to do so under the lease applicable to such other spaces in the Shopping Center; provided, however, that the prohibitions in this Article 22 (i) shall not apply to tenants operating a business in the Shopping Center at any time pursuant to a lease or occupancy agreement entered into prior to the date of this Lease, (ii) shall be deemed to have been terminated and of no further force or effect if this Lease is terminated, and (iii) shall be deemed to have been terminated if Lessee ceases the operation of its business for more than one hundred eighty (180) days for any reason other than to diligently remodel the interior of the demised premises, repair damage to the demised premises, or as a result of any law, rule, or ordinance that prohibits the operation of Lessee's business as a result of a public health emergency; and (iv) shall be deemed to have been terminated if Lessee fails to open a Fitness 19 business in the demised premises within fifteen (15) months following the date of this Lease . As used above, "Restricted Use" shall mean a membership-based fitness center, health club, yoga studio, cycling facility, or women's only fitness facility; provided, however, in no event shall any of the following be considered a Restricted Use: martial arts facilities, reformer-based Pilates studios, uses like Mommy and Me and Little Gym, or any use that is oriented towards children below the age of twelve. If a tenant or occupant of any portion of the Shopping Center operates a Restricted Use in violation of the lease or rental agreement applicable to such portion of the Shopping Center, Lessor shall not be in default under this Lease provided Lessor takes reasonable and diligent steps to cause such tenant or occupant to discontinue the disapproved use. Lessee shall have the right, but not the obligation, to pursue claims against such tenant or occupant concurrently with Lessor.

23. **PLUMBING/ELECTRICAL INSPECTION AND TERMINATION RIGHT**. The parties anticipate that the Lessee will be making substantial changes to the plumbing and electrical facilities in the demised premises. Lessee may inspect the existing plumbing and electrical facilities in the demised premises and, if Lessee is not satisfied with the condition thereof, Lessee may terminate this Lease by providing Lessor with written notice of termination which notice must, in order to be effective, be given to Lessor within the One Hundred twenty (120) day period referenced in Article 21 above (i.e., within One Hundred Twenty (120) days after Lessor gives the SB Use Waiver Notice). If Lessee fails to so terminate this Lease, Lessee shall be deemed to have accepted the plumbing and electrical facilities in their as-is condition and Lessee shall be responsible to maintain, repair, replace, and take care of the same at Lessee's sole cost and expense.

**IN WITNESS WHEREOF,** the parties hereto have executed this Lease.

"LESSOR;

BY
Matthew Franklin

BY
Nicholas Franklin

BY
Amylynn Franklin Dimaano

INITIAL(S)

CONFIDENTIAL                                                          AWIC005103

BY F. and F. Investment Company, a California general partnership

BY: _____
Its Authorized Agent

BY _____
Alana Megdal as Trustee of the Alana Megdal 2012 Irrevocable Trust

BY _____
Blake Megdal

BY _____
Taylor Megdal

BY _____
Brooke Megdal

BY _____
Elliot Megdal as Trustee of the Megdal Family Trust dated 07/02/96

BY _____
Frenda J. Franklin as Trustee of the Franklin Exemption Trust FBO
Frenda J. Franklin u/d/t Dated November 13, 2000

BY _____
Frenda J. Franklin as Trustee of the Frenda J. Franklin 2012 Irrevocable Trust


"LESSEE"
ENDO FITNESS LL, LLC, a California limited liability company

BY  ARC Consulting Group, Inc., a California corporation, Manager

BY _____
Robert T. Rodger, President

INITIAL(S)

CONFIDENTIAL                                                                              AWIC005104

Under Seal by this
Court at DKT. #23-1
as
# EXHIBIT H

# Under Seal by this Court at DKT. #23-1 as

# EXHIBIT I

Under Seal by this Court at DKT. #23-1 as

# EXHIBIT J

# Under Seal by this Court at DKT. #23-1 as

# EXHIBIT K

# EXHIBIT P

From: Bob Rodger <bobrodger19@gmail.com>
Sent: Monday, March 8, 2021 6:09 PM
To: Casey Pirog <casey@fitness19.com>
Cc: Paul Rice <paulerice@verizon.net>; Packy Wilson <packyw@aol.com>; Robert Lineberger <lineberger19@gmail.com>; Paul INFALD <pinfald@aol.com>; Thomas Graves <thomas@rainiercommercial.com>
Subject: Re: Franchise and Area Development Agreements

Casey,

Thank you again for the reply. I was pleased to read that Holdings' agrees with me that there is a path forward. I have attempted many times to highlight the bright future we could all share once we establish a meeting of the minds. I have insisted we must unite around a shared objective of opening and operating profitable fitness clubs. In the simplest view this is our path forward; not pieces of paper with provisions, protections, and signatures. These agreements are not the answer; great fitness clubs are the answer!

Perhaps now is the time to openly declare our objectives in the interest of progress. I have stated time and again that the ENDO partners desire to grow our business (and the Fitness 19 brand) within a framework that gives us the flexibility to try new things and subsequently learn, adapt, and change as we see fit. This is the framework that Holdings has generally embraced and that has allowed ENDO and its partners to become the largest and most successful franchisee in the brand. In short, ENDO's objectives remain the same. We want to run our existing Fitness 19 locations, open new Fitness 19 locations, and grow and improve the brand in an autonomous environment where we enjoy the work we do everyday.

Let me state for the record what I understand Holdings' objectives to be. Holdings wants to be paid for our use of the Fitness 19 name. You started the brand and as a result you want to benefit. We do not disagree with that position. Additionally, I have been told many times that Holdings wants to reduce or even eliminate risk. This is achieved by not providing capital, not signing lease guarantees and not being owners. We understand that choice since the risk of serving as the guarantor is clearly greater than the potential rewards. We have moved forward with new deals under these ideas. Lastly, Thomas has explained to me that Holdings wants a "legacy" to be created by this company. That is admirable and that is exactly what we want too. If goal #1 is running profitable clubs I consider our shared "legacy" to be goal #2. Let's make this happen and be proud of what we achieve together.

As we all recognize the fitness business and our relationship have evolved a lot over the years. We are a fully independent operation. ENDO now has a three person internal marketing team (Marketing Director, Social Media Strategist, Graphic Designer), a Financial Controller, Human Resource professional, as well as Operations, Accounts Payable, and Payroll departments. We have robust internal controls and metrics created to increase production with maximum efficiency. We have an architecture and construction team that can help navigate and procure required entitlements, design beautiful clubs with aesthetic, functionality, and cost considered, and build high quality clubs that finish on budget and on time. ENDO and its partners are now guaranteeing equipment leases for both exercise equipment and ancillary equipment like tanning and hydro when necessary. With this team now assembled and the support infrastructure built we are poised to do even bigger things. As a result, Holdings stands to benefit in previously unimaginable ways. ENDO is prepared to make Holdings big dollars as a result of our long term relationship and our shared desire to grow the Fitness 19 brand. All this can be accomplished with Holdings 1) doing no work 2) providing no capital and 3) taking no risk. This would seem to be an enormous win for Holdings to financially prosper from the early creation and incubation of the brand with no additional obligations.

I will state again that we disagree with your position that anyone or any entity has breached any agreement with Holdings. However, if you believe that to be that case the only way to cure is for ENDO to sign a franchise agreement. This is what we have been requesting from the beginning; send us the existing franchise agreement outlining a 90/10 deal and we will sign it. If Holdings no longer wants to do deals under this structure we are willing to work together quickly to negotiate new terms now.

Over the years Paul and Paul have done their best to look after the investments of all partners, investors, lenders, guarantors etc. All the clubs that Paul or Paul have closed have survived the guarantee period and created more income than loss. Examples include: North Las Vegas, Upland, Fontana, Corona, Henderson, Highland, Hesperia, Hemet, Baldwin Park, San Ramon, and Sunnyvale. What happens when a franchise club needs to close inside the guarantee period? With the franchise agreement silent on the matter this is governed by the lease guarantee only. This leaves Holdings exclusively responsible to make payment to the landlord after the gym LLC has liquidated all assets and made rent payment to the best of its ability. I will reiterate, Thomas has communicated to me that Holdings does not want to be in this tenuous position. Nevertheless, it is a position in which Holdings currently sits in multiple franchise deals. The point here is that ENDO operating free and clear with control over and responsibility for leases and lease guarantees relieves Holdings from monumental obligation over which they currently have nearly zero control. We have more deals coming; several with possible rents approaching or exceeding $50,000/month. Limited guarantees that stretch 3 - 5 years could create as much as $3mm in liability and that is not considering a guaranteed amortized Tenant Improvement Allowance.

Other possible situations are not addressed in the existing agreements either. For example, we have written an offer to purchase a stand alone building. We are excited for the opportunity if our offer is accepted. In this case we will be both the Tenant and the Landlord. We have also submitted an LOI to buy a chain of clubs. Some of the big moves we are planning will require a big money investor. If that is the case, the ENDO partners will be forced to dilute our ownership interests to give the investor(s) the equity they need. As we have said in the past an outside investor is the key to growing and growing fast. Clearing the way for us to raise money is also paving the road ahead to build the legacy we all want.

Holdings has stated you intend to terminate the Exclusive Territory Agreements if the alleged breach is not cured. We want these territories to remain in place and in our opinion a franchisor should want their largest franchisees to be protected and encouraged to grow. However, please also understand we do not believe we will be negatively impacted by the termination of the Exclusive Territory Agreements. Each individual location would still have the radius restrictions in place resulting from the previously executed agreements. Per the agreements the person or entity that has the right to object to the opening of a new fitness center within the radius restriction is the franchisee. In other words, Paul, Paul, or ENDO can object to new fitness centers being opened within the radius restriction, but Holdings cannot. Furthermore, if a new Fitness 19 were to open in the existing territories (outside the radius restriction) we are under no obligation to provide (and definitively would not provide) these new Fitness 19 members access to our clubs. The Exclusive Territory Agreement and the end of the "All Club" membership were both executed primarily to protect us from Victor Poma. Prior to these agreements, we were left to fend for ourselves with an operator that was historically difficult to deal with. Obviously, an exclusive territory agreement only prevents the opening of a Fitness 19 branded club. The territory agreement can't stop Victor or any other Fitness 19 franchisee from opening a non-Fitness 19 branded club.

We want to continue to open and operate Fitness 19 locations and exclusively Fitness 19 locations. However, we don't have to. A non-compete in California has been held unenforceable time and again by the courts. The supposed purpose of a non-compete in this context is to ensure that franchisees do not use "secret" or "proprietary" information in competition with the franchise. The true intention is to limit the franchisee's options; which you cannot do. California Business and Professions Code 16600 is clear on this subject. In order to be enforceable a non-compete must be narrow in scope, narrow in term, and narrow in geography. A non-compete that precludes the franchisee from any other fitness operation, for an indeterminate period of time, across the third largest state by area, and most populous state is anything but narrow. While we prefer and earnestly desire to continue to operate exclusively Fitness 19 clubs we have prepared and trademarked a separate brand. We are prepared to use this brand out-of-state and inside California if our territory rights are terminated. I will state again - that is not our preferred course of action. We would rather negotiate a new and improved franchise agreement.

In our view, the next steps are simple. Holdings has demonstrated a willingness to come to the table and alter the proposed agreements. To be clear - more changes are necessary. We are also ready to dive fully into re-negotiating these franchise agreements with three overarching goals.

1) ENDO has the operational control needed to manage the enterprise without interference.
2) Holdings is compensated for the creation of the brand in a way that is fair to both franchisor and franchisee.
3) We all return to a place where we can operate without animus or contention united by our objectives of opening and operating great fitness clubs.

If Holdings is ready to engage in a conversation centered around these objectives please indicate that now. I will make some additional edits to the agreement and schedule a call with Casey and Thomas for next week once Casey is available. The future can be better than the past.

Thanks,
Bob

On Sat, Mar 6, 2021 at 1:53 PM Bob Rodger <bobrodger19@gmail.com> wrote:
  Thank you Casey. Wishing you a successful procedure. Be well.

  Sent from my iPhone

    On Mar 6, 2021, at 12:40 PM, Casey Pirog <casey@fitness19.com> wrote:

     Hi Bob, just a heads up that I will be out Tuesday to Friday next week for surgery so during this time, please reach out to Thomas.

     Thanks,
     Casey

       On Mar 5, 2021, at 8:25 PM, Bob Rodger <bobrodger19@gmail.com> wrote:

       Casey,

       Thank you for the email. I want to acknowledge receipt. There is a lot to review here. As you can imagine we disagree with your assertion that a breach has been committed. That aside, we do agree that a path forward that works for everyone exists as there is much to be gained for both parties. I will be back with you next week when I have had time to review and discuss with my partners.

       Have a good weekend,
       Bob

       Sent from my iPhone

         On Mar 5, 2021, at 4:04 PM, Casey Pirog <casey@fitness19.com> wrote:

         Hi Bob, thank you for getting back to us with your requests for the modified franchise paperwork. The provisions you requested are all acceptable and attached is the modified franchise agreement to reflect the revisions to the terms you outlined. Once you have reviewed the changes, and read through the balance of the document, we can set up a call with Thomas to go over any and all questions and/or comments you would like to discuss.

         In regards to the previously signed leases you have sent over for West Covina, CA and Morgan Hill, CA, Holdings is ok going the franchise (vs. partner) route for these deals, but there are serious issues with how things have been handled with the leases, relative to the agreements, that need to be addressed.

         To recap, in August 2017, F19 Franchising, LLC ("F19 Franchising") entered into separate Exclusive Territory Agreements ("Territory Agreement") with Innovative Fitness Club Consulting, Inc. ("Innovative Fitness") and with Paul Infald ("Infald"). The Territory Agreements gave Innovative Fitness and Infald, or any other entities they controlled, the exclusive right to develop and operate Fitness 19 Fitness Centers ("Clubs") within their respective specific territories in California (collectively the "Territory").

         In December 2019, F19 Franchising, Innovative Fitness, and Infald executed the "First Amendment of Exclusive Territory Agreement ("Amendment"). The Amendment provided ENDO Fitness, LLC ("Endo"), an entity that neither Innovative Fitness or Infald controlled, the ongoing authorization to develop and operate Clubs in

# EXHIBIT Q

| | |
|---|---|
| **From:** | Paul Rice <paulerice@verizon.net> |
| **Sent:** | Wednesday, October 6, 2021 7:52 PM |
| **To:** | 'Bob Rodger'; 'Paul Infald'; 'Adam Osborn' |
| **Subject:** | RE: New Club Funding |

Thanks Bobby. We have some great opportunities. The only thing we don't know right now is what might happen in Newark. Until the CC&R's are clear we can't move forward on this deal. The risk of being shut down is too great and it could be catastrophic to this location. We can't wait around forever either we need to decide what to move on in the event that this ownership group can't deliver this location. We have a lot of risk out there as you all know so please only commit what you are comfortable with. Thanks

---

**From:** Bob Rodger <bobrodger19@gmail.com>
**Sent:** Wednesday, October 6, 2021 4:04 PM
**To:** Paul Rice <paulerice@verizon.net>; Paul Infald <pinfald@aol.com>; Adam Osborn <adamosborn19@gmail.com>
**Subject:** New Club Funding

Guys,

We have two projects in front of us - the new club in Carson City and the remodel of Campbell. We also have two potential projects as well - Newark and Loma Linda. Let me review the details once again.

**Campbell:**
I think we need about $200,000 here to really freshen the club and make it fully competitive with our other new clubs from a look and feel perspective. This will get us full treatment areas, turf area, and a dedicated cycling studio.

**Carson City:**
Construction budget is $1.6mm. We get $424,850 from the landlord. Start date is likely the middle of November.

**Newark:**
We still don't have an airtight remedy on the CC&Rs with the landlord. We could soon. The construction budget is $1.95mm given the size of the space and the increase in raw material costs. Landlord gives us $336,000.

**Loma Linda:**
Landlord has been exceedingly difficult - to the point of being rude. I am optimistic we can make this happen. We still need an entitlement to be processed by the city of Loma Linda so this is a number of months out no matter what. Construction budget is high because we are responsible for the roof and the HVAC in addition to our normal tenant improvement package. Tons of free rent, but no cash back from the landlord

What we need to know now as we put our plan together is what each of us can commit to contributing to our growth by Jan 15, 2022. This is after December splits have been paid to us and tax estimates have been paid by us. My number is $300,000. I have also raised over a million dollars from my contacts. Please think carefully on this subject and let me know what you can actually do. We have some decisions to make. FYI, I am also having lunch with David Kohn and another banker from American Business Bank tomorrow. I will find out if we are in a place to do anything else with them any time soon.

| Club | Carson City | Campbell | Newark | Loma Linda | Total |
|---|---|---|---|---|---|
| Construction Budget | $1,600,000 | $200,000 | $1,950,000 | $1,900,000 | $5,650,000 |

1

| Landlord Reimbursement | ($424,850) | $0 | ($336,000) | $0 | ($760,850) |
| Total | $1,175,150 | $200,000 | $1,614,000 | $1,900,000 | $4,889,150 |

| | |
|---|---|
| Total Investment Required | $4,889,150 |
| Investor Cash Committed | ($1,175,000) |
| LF Fitness TI Loans | ($300,000) |
| Subtotal | $3,414,150 |
| Rodger | ($300,000) |
| Rice | $0 |
| Infald | $0 |
| Osborn | $0 |
| | $3,114,150 |

Thanks,
Bob

RODGER 00010934