O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F19 FRANCHISING, LLC, a California limited liability company; F-19 HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br>v.<br><br>ENDO FITNESS LL, LLC, a California limited liability company; ENDO FITNESS 3, LLC, a California limited liability company, ENDO FITNESS, LLC, a California limited liability company; ROBERT RODGER, individually; PAUL RICE, individually; PAUL INFALD, individually; and ADAM OSBORN, individually,<br><br>Defendants. | Case No.: 2:23-cv-00185-MEMF-JC<br><br>**DENYING MOTION TO DISMISS [ECF NO. 71]** |

Before the Court is the Motion to Dismiss filed by Defendants Endo Fitness LL, LLC; Endo Fitness 3, LLC; Endo Fitness, LLC; Robert Rodger; Paul Rice; Paul Infald; and Adam Osborn. For the reasons stated herein, the Court hereby DENIES the Motion to Dismiss.

/ / /

/ / /

1

I. **Factual and Procedural Background**

A. **Factual Allegations**[1]

The Court has summarized the relevant factual and procedural background in this case in its previous Order Granting in Part Defendants' Motion to Dismiss, ECF No. 66, and Order Granting Plaintiffs' Request for a Temporary Restraining Order, ECF No. 47. As such, the Court only recites the factual and procedural background relevant to the instant order.

Defendants Endo Fitness LL, LLC ("Endo LL"); Endo Fitness 3, LLC ("Endo 3"); Endo Fitness, LLC ("Endo"); Robert Rodger ("Rodger"); Paul Rice ("Rice"); Paul Infald ("Infald"), and Adam Osborn ("Osborn," and collectively, the "Endo Defendants") previously filed a motion to dismiss that sought to dismiss, in relevant part, Plaintiffs F19 Franchising, LLC ("Franchising") and F-19 Holdings, LLC's ("Holdings," and collectively, "F19 Plaintiffs") claims for trade dress infringement and unjust enrichment and constructive trust. ECF No. 32 ("Previous MTD"). The Court Granted the Previous MTD in part. ECF No. 66 ("Previous MTD Order"). In the Previous MTD Order, the Court granted the Previous MTD as to the F19 Plaintiffs' claim for trade dress infringement but did not make any findings as to the sufficiency of the trade dress infringement claim as pled in the then operative first amended complaint because the F19 Plaintiffs had agreed to amend the trade dress claim. Previous MTD Order at 6. The Court also held that a constructive trust was a remedy that the F19 Plaintiffs could seek, but not a claim on which to base recovery. Previous MTD Order at 9. The Court further held that it would treat the F19 Plaintiffs' unjust enrichment claim as one for quasi-contract, and granted leave to amend insofar as the F19 Plaintiffs believed they could state a quasi-contract claim. *Id.*

On September 21, 2023, the F19 Plaintiffs filed their Second Amended Complaint ("SAC"). The SAC includes a trade dress infringement claim (third cause of action) and an unjust enrichment and constructive trust claim (sixth cause of action). *See generally,* SAC. On October 5, 2021, the

---

[1] The following factual allegations are derived from the allegations in Plaintiffs' Second Amended Complaint, ECF No. 69 ("SAC"), unless otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they *are* true.

Endo Defendants filed the instant Motion to Dismiss. ECF No. 71 ("Motion" or "Mot."). The Motion is fully briefed. *See* ECF Nos. 77 ("Opposition" or "Opp'n"), 78 ("Reply").

## II. Applicable Law

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. Discussion

In their Motion, the Endo Defendants argue that the Court should dismiss the F19 Plaintiffs' third cause of action for trade dress infringement and sixth cause of action for unjust enrichment and constructive trust. As explained further below, the Court declines to dismiss the trade dress infringement claim, but GRANTS IN PART the Motion as to the F19 Plaintiffs' unjust enrichment and constructive trust claim.

/ / /

### A. The F19 Plaintiffs Properly Plead Trade Dress Infringement (Third Cause of Action)

"The term 'trade dress' is often used to describe the overall appearance or image of goods or services in the marketplace." Restatement (Third) of Unfair Competition § 16 (1995). Traditionally, trade dress was "limited to the overall appearance of labels, wrappers, and containers used in packaging a product." 1 McCarthy on Trademarks & Unfair Competition § 8:1 (5th ed.). Today, the protective borders of trade dress have extended beyond packages and containers and include the "combination of any elements in which a product or service is presented to the buyer," as well as the "the shape and design of the product itself." *Id.*

A plaintiff must prove three elements to succeed on a trade dress infringement claim for an unregistered trade dress: (1) the trade dress is nonfunctional; (2) the trade dress has acquired secondary meaning; and (3) the infringing trade dress creates a likelihood of confusion as to source, sponsorship, affiliation or connection between plaintiff and defendant's products or services. *See id.*; *see also Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018). The Ninth Circuit has emphasized that the functionality of a trade dress is evaluated by asking whether the trade dress "*as a whole* is functional," not whether the elements individually are functional. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). However, the Ninth Circuit has also "consistently held that, as a matter of law, a product's 'overall appearance' is functional, and thus unprotectable, where the whole product is 'nothing other than the assemblage of functional parts,' and 'even the arrangement and combination' of those parts is designed to make the product more functional.'" *Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 866 (9th Cir. 2020).

The Endo Defendants urge the Court to dismiss the F19 Plaintiffs' trade dress infringement claim on three grounds: (1) the alleged trade dress is functional; (2) the F19 Plaintiffs fail to allege any facts suggesting that the alleged trade dress has acquired secondary meaning; and (3) the

allegations of infringement do not relate to the claimed trade dress.[2] The Court addresses each argument in turn.

i. The alleged trade dress must be identified and has been.

As a preliminary matter, it is important to clarify whether governing law requires that the trade dress be identified at this stage. Although there does not appear to be binding Ninth Circuit authority, the leading treatise and district courts within the Ninth Circuit (as well as courts across the nation) appear to agree that, where a combination of elements makes up a trade dress, "the discrete elements which make up that combination must be separated out and clearly identified in a list." 1 McCarthy on Trademarks & Unfair Competition § 8:3 (5th ed.); *see also Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1069–70 (N.D. Cal. 2015) ("courts in this circuit have required trade dress plaintiffs, at the very least, to provide adequate notice by including in their complaint 'a complete recitation of the concrete elements of [their] alleged trade dress.'" (citation omitted, bracketed text in original)).

This is consistent with basic pleading principles which require that a complaint provide the defendant fair notice of the allegations made. Requiring the plaintiff to identify the trade dress alleged to be infringed is necessary to provide a defendant fair notice of the trade dress it is alleged to have infringed upon.

Here, the Court finds that the F19 Plaintiffs have identified their trade dress as follows:

- Signs, exterior appearance, packaging, containers, and other items on which the words "Fitness 19" appear in a particular lettering style and distinctive color scheme (SAC ¶ 90);[3]
- A unique and distinctive design and décor, with the overarching theme as family-friendly, in contrast to other gyms that have a "meat market" atmosphere (SAC ¶ 34);

---

[2] The F19 Plaintiffs state that the Endo Defendants "do not argue that any of these [trade dress infringement] elements are missing from the allegations." Opp'n at 2. However, the Endo Defendants' Motion clearly argues that non-functionality and secondary meaning are missing from the SAC. *See* Mot. at 11-12.

[3] At the hearing, the F19 Plaintiffs' counsel clarified that this element concerns the display of the mark and not some other aspect or unknown use of "Fitness 19" mark—that is, the F19 Plaintiffs identify their trade dress as the display of the words "Fitness 19" in a particular lettering style and distinctive color scheme, not the packaging or other items that the words "Fitness 19" appears on.

5

- Gym locations that attract families (SAC ¶ 35);
- The demographics of the F19 patrons, including an even ratio of men to women (SAC ¶¶ 36, 40);
- The layout of the F19 gyms, including the high ceilings and open lines of sight, which enable parents to monitor their children's use of exercise equipment (*id.*);
- The use of only Life Fitness aerobic machines in F19 gyms (SAC ¶ 37);
- The water fountain located at the center of the gym, which serves as a reminder of the importance of hydration (SAC ¶ 38);
- The air conditioning temperature, 68 to 70 degrees Fahrenheit, which encourages extra effort when exercising (*id.*);
- The music selection, which purposefully excludes vulgar words or descriptive adult situations and is comprised of popular songs with high tempos to encourage extra effort (SAC ¶ 39); and
- The large television screens around the gyms which show only news, sports, and lifestyle programming (*id.*).

At the hearing, the F19 Plaintiffs also acknowledged that they will be required to narrow down and specify the elements they claim is part of their protected trade dress (including the particular lettering style and distinctive color scheme) and that this is a proper subject of an interrogatory during discovery. The Court finds that this is indeed a proper topic of discovery; the parties should remain mindful of this finding as discovery proceeds: an objection by the F19 Plaintiffs to being asked to further identify, with greater specificity, the elements of their trade dress will not be well taken.

        ii.  <u>The alleged trade dress is non-functional.</u>

Although the F19 Plaintiffs admit that many of the individual elements of their trade dress are functional, reading the SAC in the F19 Plaintiffs' favor and viewing the trade dress as a whole, the *arrangement and combination* of these elements is not *itself* alleged to be functional, but allegedly curated to create a certain image for consumers. *See* SAC ¶ 34 (alleging that the F19 Plaintiffs seek to avoid a "meat market" atmosphere but instead encourage family use to create a

family-friendly atmosphere at their gyms).[4] It may very well be that at summary judgment, the F19 Plaintiffs are not able to prove that the arrangement and combination of the elements is not functional, but a motion to dismiss does not examine the merits of a claim, only the sufficiency of the pleadings. And the Endo Defendants have failed to establish that the trade dress as defined is functional *as a matter of law*. The Court thus DECLINES to dismiss the trade dress infringement claim on this ground.[5]

       iii. <u>The F19 Plaintiffs properly plead secondary meaning.</u>

  The Endo Defendants also argue that the F19 Plaintiffs fail to allege that their alleged trade dress has acquired secondary meaning. The parties do not point the Court to any binding law spelling out the pleading requirements for a trade dress infringement claim, and the Court finds that, at this stage, the F19 Plaintiffs' allegations suffice.[6] In the SAC, the F19 Plaintiffs allege that the unique and distinctive design and décor they have developed "has become uniquely associated in the mind of the consuming public with Fitness 19 fitness clubs" (SAC ¶ 34) and that all Fitness 19 franchisees are required to comply with the design and décor specifications, yielding a uniform appearance across Fitness 19 gyms. *Id.* ¶ 41. This uniformity cements the association between the allegedly trade dress and the Fitness 19 gyms in the minds of the consuming public. *Id.* Again, reading the SAC in the light most favorable to the F19 Plaintiffs, as the Court must at this stage, the uniformity of an allegedly unique and distinctive décor suggests that the trade dress has attained

---

[4] The F19 Plaintiffs appear to misunderstand, at least in part, the Endo Defendants' argument on this point. The F19 Plaintiffs appear to believe that the Endo Defendants only argument concerning functionality is that the individual elements—i.e., the water fountain *itself*—is functional and thus cannot be accorded trade dress protection. *See* Opp'n at 6. However, the issue is not that the article itself is functional, but that even the curation itself—like having the water fountain in the center *because it reminds patrons to hydrate* (SAC ¶ 38)—runs afoul of the non-functionality requirement.

[5] The Court notes that it appears that part of the Endo Defendants' functionality argument is a separate argument that the alleged trade dress is not protectable because it includes elements that are essential for fitness gyms. *See* Mot. at 12. At this stage, the Court declines to make a ruling considering the *protectability* of the alleged trade dress.

[6] Because the F19 Plaintiffs properly allege secondary meaning, there is no need for the Court to opine on whether the SAC properly alleges inherent distinctiveness. *See* Reply at 8–9.

secondary meaning. The Court thus DECLINES to dismiss the trade dress infringement claim on this ground.

iv. The trade dress violation relates to the alleged dress.

Finally, the Endo Defendants argue that the F19 Plaintiffs' allegations of infringement do not relate to the identified trade dress. The F19 Plaintiffs do not appear to address this argument directly. *See generally* Opp'n.

Nevertheless, the Court finds that the F19 Plaintiffs properly allege that the Endo Defendants have infringed the identified trade dress. Reading the SAC in the F19 Plaintiffs' favor, the F19 Plaintiffs allege—as discussed above in section i—that their trade dress is composed of "Fitness 19" in a specific lettering style and distinctive color scheme, as well as the internal design elements, and that they allege that the Endo Defendants have infringed the identified trade dress by, at a minimum, using "Fitness 19" in the same specific lettering style and distinctive color scheme. *See* SAC ¶¶ 90, 91. Finally, the F19 Plaintiffs define the "Marks" as including the trade dress and state throughout the SAC that the Endo Defendants are engaging in unauthorized use of the "Marks." *See, e.g., id.* ¶ 1 ("Holdings is the owner of trademarks, service marks, logos, emblems, trade dress, and trade name for 'Fitness 19' and related marks (the 'Marks')"), 23 (the Endo Defendants "are now using the Marks . . . and thus, infringing on Holdings' intellectual property rights").

The Court thus DECLINES to dismiss the trade dress infringement claim on this ground.

### B. The F19 Plaintiffs Properly Allege a Quasi-Contract Claim (Sixth Cause of Action)

The Endo Defendants also move to dismiss the F19 Plaintiffs' sixth cause of action for unjust enrichment and constructive trust.

In the Previous MTD Order, the Court explicitly held that a constructive trust is not a claim on which to base a claim for recovery, but a remedy that the F19 Plaintiffs may request. Previous Order at 9 ("the Court does not agree that a constructive trust may [be] asserted as a claim on which to base recovery. Thus, the Court GRANTS the Endo Defendants' Motion to Dismiss as to this claim"). The Court therefore does not find that the F19 Plaintiffs are asserting a *claim* for constructive trust, and DECLINES to dismiss the Sixth Cause of Action on that ground.

As the Endo Defendants admit, the remaining question is whether the F19 Plaintiffs' allegations properly plead a claim for quasi-contract.[7] The Endo Defendants do not argue that the SAC fails to plead the proper elements, but instead argue that the quasi-contract claim cannot stand because (1) there are express contracts between the parties and, alternatively, (2) the claim is duplicative of the UCL claim. As the Court explains below, neither argument wins the day.

First, the citation the Endo Defendants point to explicitly states that an action for "'quasi contract cannot lie where there exists between the parties a valid express contract *governing the same subject matter*.'" *Carroll v. Progressive Cas. Ins. Co.*, No. 2:21-cv-0217-FMO, 2023 U.S. Dist. LEXIS 88131, at *14 (C.D. Cal. Mar. 6, 2023) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (emphasis added)). Here, the only contracts between the parties that appears on the face of the SAC[8] are the Related Franchise Agreements and the Infald Franchise Agreements, which appear to only govern the use of the F19 Plaintiffs' trademarks online. *See* SAC ¶ 115 ("Defendants Endo, Rodger, Rice, Infald, and Osborn agreed not to use the Marks in connection with any domain name, electronic address, meta tag, website, or otherwise use the Marks on the Internet, the World Wide Web, or any other similar proprietary or common carrier electronic delivery system without prior authorization from Franchising."). The F19 Plaintiffs' quasi-contract claim, however, covers *all* of the Endo Defendants' alleged wrongful acts, including *offline* wrongdoings. *See* SAC ¶¶ 108–113 ("As a result of Defendants' wrongful acts described above in using the Marks . . . Defendants have collected and will continue to collect revenues and financial profits to which they are not entitled"), 90–91 (detailing the Endo Defendants unlawful use of the F19 Plaintiffs trade dress, which is defined as part of the definition of "Marks" in SAC ¶ 1). The Court thus DECLINES to dismiss the quasi-contract claim on this ground.

The Endo Defendants also cite non-binding case law for the proposition that "'courts *generally* dismiss quasi-contract claims that are merely duplicative of UCL [and other] claims . . . .'"

---

[7] The F19 Plaintiffs continue to argue that unjust enrichment is a standalone cause of action (Opp'n at 1, 7–9), despite the Court's holding in the Previous MTD Order to the contrary, Previous MTD Order at 8. The Court will not revisit its prior holding in the absence of a proper motion for reconsideration.

[8] On a motion to dismiss, the Court can only consider the allegations in the complaint or matters judicially noticeable.

Mot. at 14. At this stage, the Court declines to dismiss the quasi-contract claim on the ground that it is duplicative of the UCL claim. In *Astiana v. Hain Celestial Group, Inc.*, the Ninth Circuit reversed a district court's dismissal of a quasi-contract claim, noting that "[t]o the extent the district court concluded that the cause of action was nonsensical *because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal.*" 783 F.3d 753, 762–63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2) (emphasis added)). The Court sees no reason to depart with the general rule set forth in Rule 8(d)(2) that pleading in the alternative is allowed. At the later stages of litigation, a plaintiff may be forced to choose between alternate claims, but that time is not at the motion to dismiss stage. The Court thus DECLINES to dismiss the quasi-contract claim on this ground.

## IV. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows: The Motion is DENIED.

IT IS SO ORDERED.

Dated: June 11, 2024

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

10